UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MACK R. TEDDER,

                  Plaintiff,

v.

                                          Case No. 3:19-cv-742-MMH-JRK

MARK S. INCH, et al.,

                  Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Mack R. Tedder, an inmate of the Florida penal system, initiated this action on June 20, 2019, by filing a pro se Complaint (Doc. 1-4). He filed an Amended Complaint (Doc. 27) on February 3, 2020, and a Second Amended Complaint (SAC; Doc. 38) with exhibits (Docs. 38-1; 38-2) on June 2, 2020.[1] In the SAC, Tedder asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Pride Enterprises Incorporated, Prison Rehabilitation Industries Diversified Enterprises (PRIDE); (2) Mark S. Inch,

_____

[1] For all documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Secretary of the Florida Department of Corrections (FDOC); (3) Remero C. Green, Mission Programs Director at PRIDE; and (4) Brenda Griffis, a PRIDE employee in the dental laboratory at Union Correctional Institution (UCI). He asserts that Defendants engaged in unlawful hiring practices and discriminated against him when they failed to hire him to work in the UCI dental laboratory. As relief, he seeks compensatory and punitive damages as well as declaratory and injunctive relief.

This matter is before the Court on Defendants PRIDE, Green, and Griffis's Motion to Dismiss (Motion; Doc. 40) and Defendant Inch's Motion to Dismiss (Inch Motion; Doc. 39). The Court advised Tedder that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation and gave him an opportunity to respond. See Order (Doc. 6). Tedder filed responses in opposition to the Motions. See Motion in Opposition to Defendant Inch's Motion to Dismiss (Response; Doc. 42); Motion in Opposition to Defendants' Motion to Dismiss (Response II; Doc. 54). Thus, Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[2]

According to Tedder, he is a sixty-seven-year-old disabled,[3] close-custody, parole-eligible, white male inmate who is serving a term of life imprisonment with a 2024 presumptive parole release date (PPRD), as of 2018. See SAC at 13-14, 17-18, 21-22. He states that he has been incarcerated since 1974, and the FDOC houses him at UCI. See id. at 14. He identifies the Americans With Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964 (Title VII), the Florida Civil Rights Act (FCRA), sections 760.01 – 760.11 of the Florida Statutes, and the Fourteenth Amendment as authority applicable to his claim that Defendants Griffis and Green wrongly denied him a job in the dental laboratory based on his life sentence. See id. at 17-18. He maintains that Defendant Inch, by and through the UCI classification officers, is

---

[2] The SAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Burban v. City of Neptune Beach, 920 F.3d 1274, 1278 (11th Cir. 2019); Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the SAC and may differ from those that ultimately can be proved.

[3] According to Tedder, he lost one half of his left middle finger in a prison-related accident in 1979. See SAC at 17, 21-22.

3

responsible for the prison work programs and Tedder's ability to participate in them. See id. at 26.

As to the underlying facts, Tedder asserts that he submitted twelve job applications to the PRIDE dental laboratory over the course of approximately four years, beginning on February 10, 2014.[4] See id. at 14-16. According to Tedder, the laboratory hired life-sentenced inmates during those years, and Defendant Griffis discriminated against him when she failed and/or refused to interview him. See id. Tedder states that he submitted his thirteenth job application to the PRIDE dental laboratory on February 1, 2018, and the hiring staff granted him an interview on February 22, 2018. See id. at 16. He avers that P. Pellet (the plant supervisor and hiring manager) interviewed him and gave him a skills test, which included carving a wax candle into particular shapes within a one-hour time frame. See id. at 16-17. He states that he successfully completed the test despite the fact that he is missing one-half of his left middle finger. See id. at 17. According to Tedder, he "barely finished before the hour was up" and "did so well on the test" that Pellet wanted to hire him "on the spot." Id. (emphasis deleted). Instead, Pellet referred Tedder to

---

[4] Tedder states that he submitted job applications on February 10, 2014; August 18, 2014; March 30, 2015; July 8, 2015; October 30, 2015; February 24, 2016; May 9, 2016; October 4, 2016; May 5, 2017; July 21, 2017; October 16, 2017; and December 15, 2017, but was never granted an interview until he submitted his thirteenth job application in February 2018. See SAC at 14-16.

Griffis, who "asked [Tedder] some questions," commented on Tedder's tugboat experience, and then asked Tedder if his 2024 PPRD was "a possibility or a maybe." Id. Tedder asserts that he reaffirmed it was his PPRD. See id. He avers that Griffis explained:

> I have some bad news for you.… [Y]ou are what we need in the Dental Lab, and you have done about the best that I have ever seen on the test, but you have a life sentence and we have all the life sentence[d] inmates we can have.

Id. (emphasis deleted). Tedder states that Griffis informed him about a 60/40 quota that the hiring staff "must abide by," and she advised him to contact her if the sentencing court reduced his sentence. Id. According to Tedder, Griffis engaged in unlawful hiring practices and knew or should have known that the 60/40 quota policy was not permissible under the Florida Statutes, FCRA, ADA, or Title VII. See id. Tedder maintains that his finger injury and his status as a close-custody, life-sentenced inmate with a 2024 PPRD are qualifying disabilities under the ADA. See id. at 21-22.

Tedder states that he wrote a letter to PRIDE four days later (February 26, 2018), stating in pertinent part:

> I am writing concerning the unlawful hiring practices and discrimination of the Union dental lab against me.
>
> Beginning on February 10, 2014 to the present date, I had some twelve previous job applications

[sent] to Union dental lab for employment opportunities and they all went unanswered until I sent in the latest job application to Union dental lab on February 1, 2018.

On February 22, 2018, I received from Union dental lab, the very first job interview in the four (4) year period of which I sought employment opportunity from the dental lab.

In years past, I was overlooked by Union dental lab, for other life term inmates who had not sought out employment opportunities until several years after I first began to seek employment with Union dental lab. And, this can be easily verified from a review of Union dental lab hiring records.

**After the interview on February 22, 2018, I was told that I would not be hired because of a 60/40 hiring practice**.

When I got back to work where I work in the law library, I began to research the denial of being hired on February 22, 2018, and I discovered many things.

Pursuant to Florida Statute, Section 760.10: "It is an unlawful employment practice for an employer: (a) … to fail or refuse to hire any individual, or otherwise discriminate against any individual with respect to … privileges of employment …" (b) "[t]o limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual o[f] employment opportunities…[.]"

Pursuant to Florida Statute, Section 946.502(6): "It is further the intent of the Legislature that the corporation will devise and operate correctional work programs to utilize inmates of all custody levels <u>with</u>

6

specific emphasis on reducing idleness among close custody inmates."

Pursuant to Florida Statute, Section 946.520: … "This 60-percent requirement does not apply to any correctional work program, or private sector business authorized under this part, within an institution for any year in which, as of January 1 of that year, the average years remaining before the tentative release date of all inmates assigned to that institution exceeds 12 years."

Pursuant to Florida Statute, Section 946.523: (1)…"The purposes and objectives of this program are to: (d) [p]rovide additional opportunities for rehabilitating inmates who are otherwise ineligible to work outside the prisons, such as maximum security inmates."

Therefore, as a result of the above authorities and the actions performed against me, I sincerely request that I will be hired by PRIDE Union dental lab in the very near future in order to end this discrimination being directed toward me for whatever reason.

Doc. 38-1 at 3-4 (emphasis added and deleted). Tedder asserts that Defendant

Green failed to correct "the injury," SAC at 21, on March 8, 2018, when he

stated:

PRIDE is in receipt of your letter postmarked March 01, 2018, regarding employment opportunity.

Hiring is based on the needs of the industry. Inmates interested in PRIDE assignment must receive the approval of the institution's classification department. PRIDE['s] new inmate profile is to hire inmates with

7

> 6-10 years left on their sentence, as they will be a
> candidate for our transition program.

Doc. 38-2 at 1. Tedder maintains that the referenced "inmate profile" did not consider life-sentenced inmates, such as Tedder, with six to ten years to reach their PPRDs. SAC at 20.

Tedder describes PRIDE's "unlawful employment practices" as favoritism, nepotism, inmate transfers from the PRIDE furniture factory and tag plant to the dental laboratory, and "janitor ploy" where PRIDE "quickly worked" life-sentenced inmates up from positions as janitors to dental employees. Id. at 19-20. He provides examples of PRIDE's discriminatory practices related to hiring inmates in the dental laboratory: (1) Michael Stinespring, #791408 (no life sentence), Terry Stettler, #094945 (life sentence), and David Weeks, #098612 (life sentence) hired in 2014; (2) Darrell Trout, #059409 (life sentence) and James Clark, #537252 (life sentence) in 2015; (3) Robert Holveck, #637223 (life sentence) and Paul Lessing, #143410 (life sentence) in 2017; (4) Lindsey Cameron, #294122 (no life sentence) and William Davis, #888492 (life sentence) in 2018; (5) Steven Weldon, #573245 (life sentence) in 2019; and (6) Arthur Wilson, #863153 (life sentence) in 2020. See id. Tedder maintains that PRIDE's 2018-2020 hiring of life-sentenced inmates Davis, Weldon, and Wilson "negates" Defendants' "60/40 quota" explanation for not hiring Tedder. Id. at 20.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (alteration in original) (citation omitted); <u>see</u> <u>also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679. Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." <u>Id.</u> And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to

serve as <u>de</u> <u>facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[5] (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709); <u>see</u> <u>also</u> <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## IV. Summary of the Arguments

Defendants PRIDE, Green, Griffis, and Inch request dismissal of Tedder's claims against them under 28 U.S.C. §§ 1915A(b)(1) and 1915(g) because Tedder abused the judicial process when he failed to accurately disclose his litigation history. <u>See</u> Motion at 5-7; Inch Motion at 5-10. Additionally, Defendants maintain that Tedder fails to state plausible claims against them. <u>See</u> Motion at 7-14; Inch Motion at 10-16. Defendants Green and Griffis also state that they are entitled to qualified immunity as to Tedder's § 1983 claims against them. <u>See</u> Motion at 14-15. Defendants PRIDE, Green, and Griffis argue that Tedder is not entitled to compensatory and punitive

---

[5] "Although an unpublished opinion is not binding . . . , it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

damages under 42 U.S.C. § 1997e(e) because he has not alleged sufficient physical injuries resulting from Defendants' acts and/or omissions. See id. at 15-16. Additionally, Defendant Inch maintains that Tedder fails to request any recoverable relief from him. See Inch Motion at 16-17. In his Responses, Tedder urges the Court to deny Defendants' Motions, and maintains that he states plausible claims against Defendants. See generally Response; Response II. He also asserts that he made a good-faith effort to fully disclose his prior filings and comply with the requirements of 42 U.S.C. § 1983. See Response at 11.

## V. Discussion and Analysis

### A. Abuse of the Judicial Process

Defendants PRIDE, Griffis, Green, and Inch request dismissal of Tedder's claims against them because Tedder failed to fully disclose his litigation history. See Motion at 5-7; Inch Motion at 5-10. They assert that Tedder failed to disclose several state-court cases, see Motion at 6; Inch Motion at 5-6, and that he "had a number of actions that were dismissed as frivolous, malicious, or for failure to state a claim," Motion at 6 (citing SAC at 12-13). In his Responses, Tedder states that he "believes he has satisfied his duty of candor with his filing of his SAC." Response II at 3; see Response at 11. According to Tedder, he has a forty-six-year litigation history and "provided all

12

of the information that he had at his disposal in a good faith effort to comply" with the filing requirements. Response at 11; see Response II at 2-3.

Defendants first assert that Tedder's failure to fully disclose his litigation history warrants dismissal of his claims as malicious under 28 U.S.C. § 1915A(b)(1). See Motion at 5-6; Inch Motion at 5-10. The Prison Litigation Reform Act (PLRA) requires courts to dismiss a case at any time if the court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). When a complaint form requires a plaintiff to list his litigation history, and the plaintiff makes affirmative misrepresentations regarding his litigation history under penalty of perjury, those misrepresentations constitute an abuse of the judicial process warranting dismissal of the case as "malicious." 28 U.S.C. § 1915A(b)(1); Jenkins v. Hutcheson, 708 F. App'x 647, 648-49 (11th Cir. 2018) (per curiam); Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) (holding that dismissal of an action without prejudice as a sanction for a pro se prisoner's failure to disclose the existence of a prior lawsuit, where that prisoner was under penalty of perjury, was proper), abrogated in part on other grounds by Jones v. Bock, 549 U.S. 199 (2007); see also Sears v. Haas, 509 F. App'x 935, 935-36 (11th Cir. 2013) (per curiam) (holding that dismissal of prisoner-plaintiff's case for abuse

of the judicial process under 28 U.S.C. § 1915A(b)(1) was warranted where the prisoner failed to disclose cases he previously filed); <u>Harris v. Warden</u>, 498 F. App'x 962, 964-65 (11th Cir. 2012); <u>Jackson v. Fla. Dep't of Corr.</u>, 491 F. App'x 129, 132-33 (11th Cir. 2012).

Here, in the SAC, Tedder lists numerous civil and criminal cases that he filed in the state courts since his incarceration began in 1974, <u>see</u> SAC at 3-12, as well as civil cases he filed in the federal courts, <u>see</u> <u>id.</u> at 12-13. Tedder explains his efforts to provide his litigation history, which included a friend's computerized search to "find every and all lawsuits in the State of Florida" in which Tedder's name appeared since Tedder had sent a large portion of his legal documents to his mother, as the FDOC directed. Response II at 2. Tedder's seemingly comprehensive list of cases shows a good-faith effort to comply with the requirements of the civil rights complaint form, and fails to support a finding that his failure to provide a complete litigation history constitutes an abuse of the judicial process. As such, Defendants' Motions are due to be denied as to their assertion that the Court should dismiss Tedder's claims against them as malicious under 28 U.S.C. § 1915A(b)(1).

Next, Defendants contend that Tedder's Complaint should be dismissed because he has three strikes. The PLRA established what is commonly referred to as the three-strikes rule, which generally prevents a prisoner from bringing

14

suit in forma pauperis if he has had three or more prior suits dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g).[6] Notably, when Tedder filed his Complaint, the Court reviewed Tedder's prior filings to determine whether he was a three-strikes litigant. Tedder was not a three-strikes litigant at that time.[7] As such, Defendants' Motions are due to be denied as to their assertions that the Court should dismiss Tedder's claims against them under 28 U.S.C. § 1915(g).

### B. Tedder's Claims Against Defendant Inch

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States

---

[6] Section 1915(g) provides: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

[7] This Court takes judicial notice of filings previously brought by Tedder that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. Tedder had the following qualifying strikes on June 20, 2019, when he filed the Complaint: Mack Reed Tedder v. Michael W. Moore, et al., 4:99-cv-514-WS, and Mack R. Tedder v. Tena Pate, et al., 4:13-cv-75-MW/CAS. He filed the cases in the United States District Court for the Northern District of Florida, and the Court dismissed each case for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation" in § 1983 cases. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556 57 (11th Cir. 1984). As such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cnty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted). In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

Additionally, a civil rights complaint must include a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). While not required to include detailed factual allegations, a

16

complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Indeed, a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). To avoid dismissal for failure to state a claim on which relief can be granted, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

Tedder sues Defendant Inch in his individual and official capacities for injunctive and declaratory relief. See SAC at 23-24, 26-27. In the SAC, Tedder asserts that Defendant Inch, as the "current" FDOC Secretary, "is directly responsible for [the] prison work programs and [Tedder]'s ability to participate in them, by and through, the FDOC Classification Officers at [UCI], and at all other Correctional Institutions where PRIDE enterprises have a presence." Id. at 26.

Defendant Inch maintains that he was not the FDOC Secretary until January 2019, and therefore cannot be held individually liable for prison-related events that occurred before January 2019. See Inch Motion at 13. Defendant Inch also requests dismissal of Tedder's claims against him because

17

Tedder fails to state plausible (1) ADA, Title VII, and equal protection claims, see Inch Motion at 10-13; (2) claims against Inch in his individual capacity, see id. at 13; (3) claims against Inch in his official capacity based on respondeat superior, see id. at 13-14; and (4) Fourteenth Amendment due process claims, see id. at 14-16. Inch also states that Tedder fails to request any recoverable relief from him. See id. at 16-18. In his Response, Tedder asserts that he states plausible claims and asks for recoverable relief from Inch. See Response at 2-8, 11-15. He maintains that Inch violated the Florida Statutes. See id. at 5-6.

In the SAC, Tedder fails to provide any facts supporting his claims against Defendant Inch or any facts as to how Inch violated his federal constitutional rights and/or was involved in any alleged injustices. Notably, Defendant Inch was appointed to serve as the FDOC Secretary in January 2019, and therefore was not in a position where he could have known about Tedder's concerns related to obtaining a job in the PRIDE dental laboratory from 2014 through 2018.[8] See http://dc.state.fl.us/secretary.html. As such, Defendant Inch's Motion is due to be granted as to Tedder's claims against him in his individual capacity.

---

[8] Tedder's factual assertions relating to Defendants Griffis and Green's failure to hire him span from February 10, 2014, through March 2018. See SAC at 14-22.

Additionally, Defendant Inch asserts that Tedder attempts to hold him responsible for unlawful hiring practices by FDOC employees (specifically, unnamed UCI classification officers) that resulted in Tedder's ongoing inability to obtain a job in the dental laboratory. As to supervisory liability, the United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[9] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[10] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal

---

9  Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

10  Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

19

> connection by showing "facts which support an
> inference that the supervisor directed the
> subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop
> them from doing so," Gonzalez, 325 F.3d at 1235, or
> that a supervisor's "custom or policy . . . resulted in
> deliberate indifference to constitutional rights," Rivas
> v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008), overruled on other

grounds as recognized by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010)

(rejecting the application of a heightened pleading standard for § 1983 cases

involving qualified immunity); see also Keith v. DeKalb Cnty., Ga., 749 F.3d

1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the
> plaintiff must allege (1) the supervisor's personal
> involvement in the violation of his constitutional
> rights,[11] (2) the existence of a custom or policy that
> resulted in deliberate indifference to the plaintiff's
> constitutional rights,[12] (3) facts supporting an
> inference that the supervisor directed the unlawful
> action or knowingly failed to prevent it,[13] or (4) a

---

[11] See Goebert v. Lee Cnty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

[12] See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[13] See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of

> history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. See id. at 1328-29 (listing factors in context of summary judgment).[14] A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam). Here, Tedder has failed to allege any facts suggesting that Inch was personally involved in, or otherwise causally connected to, any alleged violations of his federal statutory or constitutional rights. As such, Defendant Inch's Motion is due to be granted to the extent that Tedder's claims against Inch will be dismissed.

With respect to Tedder's requests for prospective declaratory and injunctive relief against Defendant Inch in his official capacity,[15] see SAC at 23-24, 26-27, Inch maintains that Tedder fails to request any recoverable relief from Inch, see Inch Motion at 16-18. In response, Tedder clarifies the prospective declaratory and injunctive relief he seeks, asserting that he

---

ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[14] See West v. Tillman, 496 F.3d 1321 (11th Cir. 2007).

[15] "In Ex parte Young, the Supreme Court recognized an exception to sovereign immunity for lawsuits against state officials seeking prospective declaratory or injunctive relief to stop ongoing violations of federal law. 209 U.S. 123, 155-56 (1908).

requests an order directing that the UCI classification department and PRIDE comply with the Florida Statutes in future hiring and a declaration that they will enforce the law. See Response at 15. As to relief sought against Defendant Inch, Tedder maintains that Inch "will have to follow this Court's orders . . . ." Id.

Defendant Inch's lack of personal involvement in past constitutional violations does not preclude Tedder from obtaining prospective declaratory and injunctive relief for any ongoing violations. See Parkell v. Danberg, 833 F.3d 313, 332 (3rd Cir. 2016) (citations omitted); see also Gonzalez v. Feinerman, 663 F.3d 311, 314-15 (7th Cir. 2011). Additionally, while the Eleventh Amendment bars suit against state officials in their official capacities for monetary damages, "[a] state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit." Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing Ex parte Young, 209 U.S. 123 (1908)). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Pub. Serv. Comm'n of

Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)).

Tedder asserts that Defendant Inch, as the FDOC Secretary, is responsible for the FDOC's overall operation (including the PRIDE work programs) and has the ability to end ongoing violations related to Tedder's complaints. At the motion-to-dismiss stage, it seems premature to dismiss Tedder's requests for prospective declaratory and injunctive relief against Defendant Inch in his official capacity. As such, Inch's Motion is due to be denied as to his assertion that Tedder fails to request any recoverable relief from him.

### C. Tedder's Due Process Claims against Defendants PRIDE, Green, and Griffis

Next, the Court turns to Defendants PRIDE, Griffis, and Green's Motion. In the Motion, these Defendants request dismissal of Tedder's claims against them because he fails to state plausible claims under the Due Process Clause of the Fourteenth Amendment. See Motion at 7-9. In his Response, Tedder maintains that he has asserted plausible due process claims. See Response II at 3-6.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Fourteenth Amendment's

Due Process Clause provides two types of constitutional protection: substantive due process and procedural due process. See Searcy v. Prison Rehab Indus. & Ent, Inc., 746 F. App'x 790, 795 (11th Cir. 2018) (citing McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc)); Burlison v. Rogers, 311 F. App'x 207, 208 (11th Cir. 2008) (citation omitted). A violation of either of these categories of protection may form the basis for a lawsuit under 42 U.S.C. § 1983. See Zinermon v. Burch, 494 U.S. 113, 125 (1990).

A § 1983 action asserting a procedural due process clause violation requires proof of three elements: "a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." Doe v. Fla. Bar, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). As to the third element, due process "is a flexible concept that varies with the particular situation." Cryder, 24 F.3d at 177. Substantive due process protects "those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" McKinney, 20 F.3d at 1556 (citation omitted). The Eleventh Circuit has stated:

> Because the right is "fundamental," no amount of process can justify its infringement. By contrast, a procedural due process violation is not complete "unless and until the State fails to provide due process." Zinermon, 494 U.S. at 123, 110 S.Ct. at 983. In other words, the state may cure a procedural

> deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

Id. at 1557 (footnote omitted).

To prove a substantive due process violation, a plaintiff faces "a very 'high bar.'" King v. Pridmore, 961 F.3d 1135, 1143 (11th Cir. 2020) (quoting Maddox v. Stephens, 727 F.3d 1109, 1119 (11th Cir. 2013)), petition for cert. filed, -- U.S.L.W. --   (U.S. Dec. 28, 2020) (No. 20-877); see also Nix v. Franklin Cnty. Sch. Dist., 311 F.3d 1373, 1379 (11th Cir. 2002) ("Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances."). Indeed, "[e]ven intentional wrongs seldom violate the Due Process Clause, and 'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Maddox, 727 F.3d at 1119 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

Here, insofar as Tedder attempts to raise due process claims related to obtaining employment in the PRIDE work program, as a prison inmate, he "does not have a constitutionally protected property interest in a particular prison job assignment and does not have an expectation of keeping a certain job." Searcy, 746 F. App'x at 795 (citing Adams v. James, 784 F.2d 1077, 1079-80 (11th Cir. 1986)). Taking Tedder's assertions as true, as the Court must, he

states neither a substantive nor a procedural due process claim under the Fourteenth Amendment. As such, Defendants' Motion is due to be granted to the extent that Tedder's due process claims will be dismissed.

### D. Tedder's Equal Protection Claims against Defendants PRIDE, Green, and Griffis

Defendants also request dismissal of Tedder's equal protection claims because he fails to state plausible claims under the Equal Protection Clause of the Fourteenth Amendment. See Motion at 11-12. In his Response, Tedder maintains that he asserts plausible equal protection claims. See Response II at 7-8. To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. See Sweet v. Sec'y, Dept. of Corr., 467 F.3d 1311, 1318-19 (11th Cir. 2006); Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001).

Viewing the facts in the light most favorable to Tedder, as the Court must, the Court is not so convinced that Tedder's equal protection claims are subject to dismissal. Tedder has alleged facts sufficient to state plausible equal protection claims. In reaching this conclusion, the Court observes that Tedder alleges Defendants Green and Griffis unjustly denied him a job in the dental laboratory, and that other similarly-situated (close-custody, life-sentenced)

inmates were treated more favorably than he was during the PRIDE hiring process. The Court declines to find that these allegations if proven would fail to state a plausible equal protection claim. As such, Defendants' Motion is due to be denied as to Tedder's equal protection claims against Defendants PRIDE, Green, and Griffis.

### E. Tedder's ADA, Title VII, and FCRA Claims against Defendants PRIDE, Green, and Griffis

Next**,** Defendants maintain that Tedder fails to state plausible claims under the ADA, Title VII, and the FCRA. See Motion at 9-10, 12-13. They also assert that Tedder's ADA, Title VII, and FCRA claims against Green and Griffis, in their individual capacities, are due to be dismissed. See id. at 13-14. In response, Tedder maintains that his ADA, Title VII, and FCRA claims are plausible. See Response II at 7-11. He states that he "has shown he was a member of a protected class," and refers to his list of life-sentenced inmates in the SAC as proof of Defendants' discrimination against him, a close-custody, life-sentenced inmate with an impending PPRD. Id. at 8 (citing SAC at 19-20, ¶¶ 1-12). He also asserts that Defendants discriminated against him based on his race. See id. at 10. According to Tedder, as a Certified Dental Technician, he was qualified for a job in the dental laboratory because he excelled on the skills test. See SAC at 16-17. He describes an incident in which PRIDE hired

Anthony Marshall, a black inmate, in 2016, when Tedder had been trying to obtain a job in the dental laboratory since 2014. See id. at 25.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). State prisons are public entities for purposes of the ADA, and therefore subject to suit under the ADA. See Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998)). To state a claim of discrimination under Title II of the ADA, a claimant must allege: "'(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'" Owens, 602 F. App'x at 477 (quoting Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)). Title VII also prohibits employment discrimination based on race. 42 U.S.C. § 2000e-2.

Additionally, the FCRA prohibits discrimination based on, among other things, disability, race, and age. See Fla. Stat. § 760.01(2).[16]

Notably, discrimination claims under the ADA, Title VII, and the FCRA are governed by the same burdens of proof and analytical framework. See Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007) (noting disability claims under the FCRA and ADA are analyzed under the same framework); Addison v. Fla. Dep't of Corr., 683 F. App'x 770, 773-74 (11th Cir. 2017) ("Claims brought under the FCRA are analyzed under the same standards as Title VII because the FCRA is modeled on Title VII.") (citing Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1310 (11th Cir. 2007) ("Florida courts apply Title VII caselaw when they interpret the FCRA")).

---

[16] Florida Statutes section 760.01(2) provides: "The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state." The Florida legislature has deemed it unlawful to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a).

29

Tedder seeks to impose liability under the ADA, Title VII, and the FCRA against Defendants Green and Griffis in their individual capacities. See SAC at 1; Response II at 11 ("Certainly, Mr. Green and Ms. Griffis receive a bi-monthly paycheck from a state entity. Thus [they] can be sued under the ADA and the FCRA."). In this regard, Tedder is mistaken. As a matter of law, the ADA, Title VII, and the FCRA do not provide for individual liability. See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (stating "a Title VII claim may be brought against only the employer and not against an individual employee"); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) ("[T]he Disabilities Act does not provide for individual liability, only for employer liability."); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."); Owens, 602 F. App'x at 477; Huck v. Mega Nursing Services, Inc., 989 F. Supp. 1462, 1464 (S.D. Fla. 1997) ("[I]ndividual suits are not permitted under the [FCRA]."); Patterson v. Consumer Debt Mgmt. & Educ., Inc., 975 So.2d 1290, 1292 (Fla. 4th DCA 2008) (stating "individual liability does not exist under [the] FCRA"). Thus, Tedder fails to state plausible ADA, Title VII, and FCRA claims against Defendants Green and Griffis in their individual capacities, and Defendants'

Motion is due to be granted as to Tedder's ADA, Title VII, and FCRA claims against Defendants Green and Griffis in their individual capacities.[17]

Defendants also maintain that Tedder fails to state plausible ADA and FCRA disability claims against PRIDE. See Motion at 9-10. They contend that Tedder's allegation relating to his left middle finger "may be sufficient to establish the first and second elements" of a disability discrimination claim under either statute, however, Tedder's status as a close-custody or life-sentenced inmate "does not equate to a disability." Id. at 10 (citing 42 U.S.C. § 12112(a)). Tedder maintains that his finger injury and his life sentence qualify as disabilities. See Response II at 5-6; see also SAC at 21. He states that Defendants are "foolish" to argue that Tedder's "life sentence is not a disability when **that life sentence is exactly why he did not get hired** at the PRIDE Dental Lab." Response II at 6 (emphasis added).

Tedder's status as a close-custody, life-sentenced inmate does not qualify as a disability, as defined by the ADA or the FCRA, which is modeled after the ADA. Under the ADA, a disability is (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) "a

---

[17] Any ADA claim against Defendants Green and Griffis in their official capacities would be a claim against the State. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (noting that suits against state officials in their official capacities should be treated as suits against the State); Owens, 602 F. App'x at 478. Thus, such an ADA claim is the equivalent of a claim against PRIDE.

record of such an impairment"; or (3) "being regarded as having such an impairment" (if the person establishes that he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity"). 42 U.S.C. § 12102(1), (3). When evaluating whether an impairment substantially limits a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 911 (11th Cir. 1996) (citations omitted). Tedder's status as a close-custody, life-sentenced inmate is certainly self-limiting, however, it is not a "physical or mental impairment" under the law. As such, regardless of the role it may have played in Tedder's inability to obtain a position in the dental laboratory, it provides no basis for relief under the ADA or for an FCRA disability discrimination claim.

On the other hand, Tedder's finger injury may well qualify as a protected disability. Nevertheless, viewing the facts in the light most favorable to Tedder, as the Court must, the Court finds that Tedder has not stated plausible ADA and FCRA disability discrimination claims. He provides no facts suggesting that his finger injury played any role in PRIDE's decision not to

hire him. In reaching this conclusion, the Court observes that Tedder's assertions in the SAC are contrary to any suggestion that his finger injury was the reason for his rejection. In the absence of any facts to support a claim that Tedder's partial finger played a role in the decision not to hire him, he fails to state a plausible claim of disability discrimination. See Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]") (alteration in original) (citation omitted); Arafat v. Sch. Bd. of Broward Cnty., 549 F. App'x 872, 874 (11th Cir. 2013).

Here, Tedder identifies his claim as being one based on disability discrimination, but fails to even allege that his arguable disability (that is his partial finger) played any role in his failure to be hired. More importantly, even if he made such an allegation in a conclusory manner, he presents not a single well-pled allegation of fact to support an inference that his alleged disability played any role in the decision not to hire him in the dental laboratory. As such, Defendants' Motion is due to be granted as to Tedder's ADA and FCRA disability discrimination claims (relating to his finger injury and his status as a close-custody, life-sentenced inmate) against Defendant PRIDE, which are due to be dismissed.

The Court next considers whether Tedder has alleged plausible race discrimination claims under Title VII and the FCRA against PRIDE. Title VII provides that it is unlawful for an employer "to fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The FCRA similarly prohibits discrimination on the basis of race. See Fla. Stat. § 760.01(2). In the absence of direct evidence of discrimination, a plaintiff can establish a prima facie case of race discrimination by showing that (1) he is "a member of a protected class;" (2) he "was qualified to do the job;" (3) he "was subjected to an adverse employment action;" and (4) his employer treated "similarly situated individuals outside [his] protected class" more favorably than he was treated. Cogar v. Citrus Cnty. Sheriff's Office, No. 20-11003, 2021 WL 531304, at *4 (11th Cir. Feb. 12, 2021) (per curiam) (citing Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012)); Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). However, a plaintiff need not allege facts sufficient to make out a prima facie case in order to survive a motion to dismiss. See Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015); Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 396 (11th Cir.

2012) ("[A] plaintiff need not satisfy the <u>McDonnell Douglas</u>[18] framework at the pleading stage in order to state a claim for disparate treatment . . . ."). Nonetheless, "complaints alleging discrimination still must meet the 'plausibility standard' of <u>Twombly</u> and <u>Iqbal</u>." <u>See</u> <u>Henderson v. JP Morgan Chase Bank</u>, 436 F. App'x 935, 937 (11th Cir. 2011) (citation omitted). This standard requires well-pled factual allegations that are more than "'merely consistent with a defendant's liability,'" and raise "'more than a sheer possibility that a defendant has acted unlawfully.'" <u>See</u> <u>Bowers v. Bd. of Regents of Univ. Sys. of Ga.</u>, 509 F. App'x 906, 910 (11th Cir. 2013) (quoting <u>Iqbal</u>, 556 U.S. at 678). Indeed, the facts alleged must be sufficient to support a reasonable inference that the defendant engaged in racial discrimination against the plaintiff. <u>See</u> <u>Henderson</u>, 436 F. App'x at 937. One way to meet this standard is by "alleging facts showing that similarly-situated [individuals] outside [the plaintiff's] racial class were" treated more favorably. <u>Id.</u>

Upon careful consideration, the Court finds that Tedder's allegations fail to give rise to a plausible inference that PRIDE engaged in race discrimination. Tedder, a white inmate, fails to provide any facts suggesting that he endured race-based discrimination during the hiring process. Nor does he sufficiently

---

[18] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

allege that he was treated less favorably than similarly situated individuals outside his protected class. In the SAC, Tedder describes one incident in which PRIDE hired a black inmate during the time period when Tedder had been trying to obtain a job. See SAC at 25. The Court finds that a mere reference to the hiring of a black inmate without any well-pled facts from which one could plausibly infer that race discrimination occurred does not state a plausible claim for relief. See Caraway v. Sec'y, U.S. Dep't of Transp., 550 F. App'x 704, 710 (11th Cir. 2013) ("Given that the amended complaint did not specifically allege the existence of a valid comparator or otherwise allege facts giving rise to an inference of disparate treatment, the plaintiffs failed to allege a valid [discrimination] claim."). Tedder's unadorned allegation that PRIDE hired a black inmate instead of him "epitomizes speculation and therefore does not amount to a short and plain statement of [his] claim under Rule 8(a)." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (rejecting plaintiffs' Title VII claims of race discrimination where the complaint alleged only that the plaintiffs were denied promotions and treated differently than similarly situated white employees solely because of race), abrogated on other grounds by Twombly, 550 U.S. 544.

Even applying a liberal construction, Tedder's allegation is conclusory and insufficient under the Twombly pleading standard to survive a motion to

dismiss. Notably, Tedder argues that his life sentence is the reason Defendant Griffis did not hire him, see Response II at 6, and his complaint is largely devoted to a factual account related to job rejection based on his life sentence, see SAC at 17.[19] Thus, absent any facts plausibly suggesting disparate treatment based on race, and in light of Tedder's affirmative allegations of a non-racially motivated basis for the job rejection, the Court finds that Tedder fails to state plausible claims for race discrimination under Title VII and the FCRA. As such, Defendants' Motion is due to be granted as to his Title VII and FCRA race discrimination claims against PRIDE.

The Court next turns to Defendants' assertion that Tedder's "passing reference[]" to PRIDE's "purported discrimination" based on Tedder's age is "wholly refuted and rendered repugnant by other allegations" in the SAC and Green's letter. Motion at 11-12 (citing SAC at 20-21; Doc. 38-2). Notably, in response to Defendants' Motion, Tedder states that he "factually set out" his age in the SAC. Response II at 16 (citing SAC at 14 ¶ 1). The Court observes that Tedder did include his age in the first paragraph of the SAC's statement of facts, which reads:

---

[19] Tedder is not a member of a protected class based on his status as a close-custody, life-sentenced inmate with an impending PPRD, and the close-custody, life-sentenced inmates he describes in the SAC (who were hired when he applied for a job in the dental laboratory) are white inmates. See SAC at 19-20; http://www.dc.state.fl.us/offenderSearch.

> Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of Corrections, Defendant Inch, Secretary. Plaintiff is currently **66 years of age**, and has been incarcerated since 1974.

SAC at 14, ¶ 1 (emphasis added). However, Tedder does not allege that PRIDE rejected him because of his age, much less plead any facts suggesting that PRIDE rejected him based on his advanced age. Reading the SAC as a whole, the Court finds that Tedder simply provided his age for introductory and descriptive purposes. Notably, the crux of Tedder's SAC is that he was denied a job due to his status as a life-sentenced inmate, see SAC at 17, which Tedder reaffirmed in his response to Defendants' Motion, see Response II at 6. As such, to the extent Tedder pursues an FCRA claim based on his age against PRIDE, Defendants' Motion is due to be granted.

### F. Qualified Immunity

Defendants Green and Griffis assert that they are entitled to qualified immunity from liability under 42 U.S.C. § 1983. See Motion at 14-15. In his Response, Tedder maintains that they are not entitled to qualified immunity. See Response II at 11-13. He asserts that Defendants' "actions toward [him] were outside the scope of [their] authority and their employment" with PRIDE, and therefore he should be permitted to proceed with his § 1983 claims against them. Id. at 13.

38

The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it

> is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.
>
> Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017); see King, 961 F.3d at 1142.[20] In an action with multiple named defendants, each defendant is entitled to an independent qualified immunity analysis as it relates to his actions. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

---

[20] The Court notes that where the alleged conditions are particularly egregious, a general constitutional law already identified in decisional law may be applicable such that a reasonable officer would know that the egregious conditions violate the Constitution. Taylor v. Riojas, 141 S. Ct. 52 (2020).

Under the doctrine of qualified immunity, Defendants Green and Griffis may claim they are entitled to qualified immunity from monetary damages in their individual capacities. As to the underlying facts against each Defendant, Tedder asserts that Defendant Griffis discriminated against him when she failed to interview and hire him for a job in the dental laboratory, and Defendant Green failed to correct the injustices that Tedder experienced when he repeatedly tried to gain employment. Defendants were engaged in discretionary functions during the events at issue. See SAC at 16-17, 20-21; Doc. 38-2 at 1. Thus, to defeat qualified immunity with respect to these Defendants, Tedder must show both that Defendants committed a constitutional violation, and that the constitutional right violated was clearly established. As the Eleventh Circuit has instructed, the Court must "parse" the actions each Defendant undertook, and "address the evidence as it pertains solely to him." Alcocer, 906 F.3d at 952.

For the reasons set forth above, the Court has found that Tedder has failed to state a plausible Fourteenth Amendment due process claim against either Defendant Green or Griffis. Thus, Defendants Green and Griffis are entitled to qualified immunity from monetary damages in their individual capacities as to Tedder's Fourteenth Amendment due process claims against them. As such, Defendants' Motion as to their assertion of qualified immunity

41

with respect to Tedder's Fourteenth Amendment due process claims is due to be granted.

Next, the Court turns to Defendants' assertion that they are entitled to qualified immunity with respect to Tedder's Fourteenth Amendment equal protection claims for monetary damages against them in their individual capacities. As previously noted, Defendants were engaged in discretionary functions when they rejected Tedder for a job. Thus, the burden shifts to Tedder, who must allege facts that, accepted as true, demonstrate Defendants violated a constitutional right that was clearly established at the time of the alleged violation. See Dickinson v. Cochran, 833 F. App'x 268, 271 (11th Cir. 2020) (citation omitted).

Accepting Tedder's allegations with respect to each Defendant and considering those allegations independently, the Court finds that Tedder has alleged facts sufficient to state plausible Fourteenth Amendment equal protection claims against each Defendant. According to Tedder, Defendants discriminated against him when Griffis failed to hire Tedder for a job in the dental laboratory because of his life sentence and when Green failed to remedy the injustices while other similarly-situated inmates were treated more favorably than Tedder was during the hiring process. Thus, reviewing only the allegations in Tedder's SAC with respect to each Defendant, Tedder

sufficiently alleges a plausible violation of his clearly established Fourteenth Amendment right to equal protection of the law as to each Defendant. As such, for the reasons set forth in <u>Section V.D.</u>, Defendants' Motion as to their assertion of qualified immunity with respect Tedder's equal protection claims is due to be denied.[21]

### G. Physical Injury Requirement
### 42 U.S.C. § 1997e(e)

Defendants PRIDE, Griffis, and Green also assert that Tedder is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injuries that are more than <u>de</u> <u>minimis</u> resulting from their acts and/or omissions. <u>See</u> Motion at 15-16. In his Response, Tedder maintains that Defendants "should know full well that section 1997 has to do with bodily injury, something the Plaintiff has never alleged." Response II at 13. He states that he seeks back pay, compensatory damages, and punitive damages under Florida Statutes section 760.11(5). <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> SAC at 23, 26. However, Tedder's claims under the FCRA are all due to be dismissed. His sole remaining claim is based upon his allegation of a violation of his right to equal protection under the Fourteenth Amendment.

---

[21] The Eleventh Circuit instructs that "a qualified immunity analysis is unnecessary under Title VII" because the qualified-immunity doctrine protects a public official from liability for money damages in his individual capacity. <u>See</u> <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991).

Thus, the Court limits its consideration of his request for damages to that claim.

In Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit Court of Appeals addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit stated:

> The PLRA [(Prison Litigation Reform Act)] places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:
>
>> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act....
>
> This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983. See Harris v. Garner (Harris II), 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)....
>
> In this case, [Plaintiff] did not allege any physical injury. . . . Nevertheless, he sought "compensatory . . . punitive, and nominal damages" from [Defendant]. **Under the statute and our caselaw, an incarcerated plaintiff cannot**

44

> **recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.** See <u>Al-Amin</u>, 637 F.3d at 1198 (punitive); <u>Harris v. Garner (Harris I)</u>, 190 F.3d 1279, 1286 (11th Cir. 1999) (compensatory), <u>reh'g en banc granted and opinion vacated</u>, 197 F.3d 1059 (11th Cir. 1999), <u>opinion reinstated in relevant part</u>, 216 F.3d 970. However, we have never had the opportunity in a published opinion to settle the availability of nominal damages under the PLRA. We do today, and we hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.

<u>Brooks</u>, 800 F.3d at 1307-08 (emphasis added).

To satisfy § 1997e(e), a prisoner must assert physical injury that is more than <u>de minimis</u>, but the injury does not need to be significant. See <u>Thompson v. Sec'y, Fla. Dep't of Corr.</u>, 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); <u>Dixon v. Toole</u>, 225 F. App'x 797, 799 (11th Cir. 2007). Despite § 1997e(e)'s limitation, successful constitutional claimants who lack a physical injury may still recover nominal damages. See <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). Further, the Eleventh Circuit has instructed courts to dismiss the inmate's compensatory and punitive damages claims under § 1997e(e) without prejudice

to allow the inmate to refile if and when the inmate is released. See Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2000).

In the SAC, Tedder asserts that he seeks compensatory and punitive damages. See SAC at 23, 26. Taking Tedder's allegations as true, he is not entitled to seek compensatory and punitive damages because he fails to assert any physical injury that resulted from Defendants PRIDE, Griffis, and Green's actions and/or omissions. Tedder's assertions, without any allegations of physical injury resulting from Defendants' actions or omissions, fail to satisfy § 1997e(e)'s injury requirement. See Thompson, 551 F. App'x at 557 n.3. Thus, Defendants' Motion is due to be granted to the extent that the Court finds Tedder's request for compensatory and punitive damages from Defendants PRIDE, Griffis, and Green is precluded under § 1997e(e) because he did not suffer any physical injury as a result of their actions and/or omissions.

Notably, where courts have liberally construed a complaint to include a request for nominal damages or equitable relief, they have done so based on language in the complaint requesting some sort of additional relief ("such other relief as may appear that plaintiff is entitled," or "any other relief the court deems appropriate or just" or similar language). See Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006). Here, it appears that Tedder has not made a request for nominal damages, nor has he included any language which the

Court could construe as a request for nominal damages. <u>See</u> SAC at 22-23, 26-27. Nevertheless, "a district court may grant relief to which a plaintiff is entitled even when that relief is not requested in the complaint." <u>Furman v. Warden</u>, 827 F. App'x 927, 935 (11th Cir. 2020) ("Moreover, that the operative complaint in this case included no specific request for nominal damages does not foreclose their availability. For a non-lawyer, <u>pro se</u> litigant (at least), a plea for compensatory damages or for general damages, includes nominal damages: the greater includes the lesser.") (citations omitted). As such, Tedder may be entitled to an award of nominal damages from Defendants if he establishes a constitutional violation.

## VI. Tedder's Requests in his Response

In his Response, Tedder asks that the Court allow him to submit an affidavit from Pellet who informed Tedder that he had been hired in the dental laboratory. <u>See</u> Response II at 19. Additionally, he requests that the Court permit him to reinstate two prior motions. <u>See</u> <u>id.</u> at 20. Preliminarily, the Court notes that a request for affirmative relief is not properly made when simply included in a response to a motion. <u>See</u> Fed. R. Civ. P. 7(b); <u>see also</u> <u>Rosenberg v. Gould</u>, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting <u>Posner v.</u>

47

Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)).

Moreover, even if it were proper to include such requests in the Response, the requests are otherwise due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g), United States District Court, Middle District of Florida (Local Rule(s)). Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court. See Local Rule 3.01(a). Local Rule 3.01(g) requires certification that the moving party has conferred with opposing counsel in a good faith effort to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested. See Local Rule 3.01(g). Thus, the Court will not entertain Tedder's requests for relief included in the Response. Tedder is advised that, if he wishes to pursue such relief, he is required to file an appropriate motion, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. Additionally, Tedder may submit exhibits at the summary-judgment stage, if he elects to do so.

In consideration of the foregoing, it is now

**ORDERED**:

1.    Defendants PRIDE, Griffis, and Green's Motion to Dismiss (Doc. 40) is **GRANTED** as to Tedder's: (1) Fourteenth Amendment due process claims; (2) ADA, Title VII, and FCRA claims against Defendants Green and

48

Griffis in their individual capacities; (3) ADA and FCRA claims relating to Tedder's finger injury and status as a close-custody, life-sentenced inmate against PRIDE; (4) Title VII and FCRA race discrimination claims against PRIDE; (5) FCRA claim based on Tedder's age against PRIDE; and (6) request for compensatory and punitive damages from Defendants PRIDE, Griffis, and Green, as precluded under 42 U.S.C. § 1997e(e). Additionally, the Motion is **GRANTED** as to Defendants Griffis and Green's assertion of qualified immunity as to Tedder's Fourteenth Amendment due process claims against them, and **DENIED** as to their assertion of qualified immunity with respect Tedder's Fourteenth Amendment equal protection claims against them. All remaining portions of the Motion are **DENIED**.

2.      Defendant Inch's Motion to Dismiss (Doc. 39) is **GRANTED** as to Tedder's claims against Inch in his individual capacity. All remaining portions of the Motion are **DENIED.**

3.     Defendants PRIDE, Griffis, Green, and Inch shall answer or otherwise respond to Tedder's remaining claims **no later than March 31, 2021**.[22]

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of March, 2021.

MARCIA MORALES HOWARD
United States District Judge

sc 3/1
c: Mack R. Tedder, FDOC # 035639
   Counsel of Record

---

[22] The remaining claims are Tedder's: (1) Fourteenth Amendment equal protection claims against Defendants PRIDE, Green, and Griffis, and (2) requests for prospective declaratory and injunctive relief against Defendant Inch in his official capacity.

50